NO. 07-99-0162-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

MARCH 28, 2001

_____

RICKY DON MINDIETA, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

_____

FROM THE 106TH DISTRICT COURT OF GARZA COUNTY;

NO. 98-1980; HONORABLE GENE DULANEY, JUDGE

_____

Before BOYD, C.J., and REAVIS and JOHNSON, JJ.

Appellant Ricky Don Mindieta appeals from his conviction and sentence of 15 years incarceration for assaulting a deputy sheriff of Garza County who was discharging an official duty.  Appellant asserts that he received ineffective assistance of counsel at the guilt-innocence stage of trial.  We affirm.

BACKGROUND

The events which resulted in appellant's conviction began outside George's restaurant in Post, Texas, at approximately 10:30 p.m. on November 13, 1998. The State presented four witnesses to prove what happened. Appellant, who had a long history of involvement with law enforcement authorities, testified and contradicted the State's witnesses.

Trecia Heying, was the first witness for the State. She was an off-duty employee of the restaurant who had returned to pick up some food. According to Heying, appellant approached her in the parking lot of the restaurant. She testified that appellant asked her to go inside the restaurant and request particular customers of the restaurant to come outside and meet him. Both patrons refused the request. According to Heying, appellant then asked her to purchase "some more" beer for him. Appellant appeared to Heying to be intoxicated. The second time Heying went into the restaurant at appellant's request, she had spoken to Sandra Mary Landa, an on-duty restaurant waitress, about the disturbance appellant was causing. Landa called the police. Jerrod Bell, a Garza County deputy sheriff, and Kyle Edwards, a Department of Public Safety officer, responded. Each officer was in the uniform of his respective law enforcement agency, and driving a vehicle marked with law enforcement insignia.

The State's second witness was Landa, who was a cousin of appellant. Landa observed appellant in the parking lot. He was being "loud" and appeared to be drunk. She later saw Deputy Bell and Trooper Edwards trying to handcuff appellant and get him into Bell's patrol car. She recalled another Garza County deputy, Cliff Laws, appearing on the

scene briefly. It appeared to Landa that appellant was cussing, yelling, not cooperating, and was trying to hit and kick the officers. She was familiar with epileptic seizures from experience with her mother's epilepsy. Although she had not seen appellant have a seizure before, it did not appear to her as though he was having a seizure that night. It appeared to her as though the officers were trying to calm appellant down. She did not believe that any of the officers used excessive force on appellant. Landa was in the parking lot while much of the interaction between appellant and the officers was taking place, because she stayed there with Heying for a while. Heying's husband, Randy Baker, appeared at the parking lot, took Heying home, then returned to confront appellant. Baker had been drinking when he returned, but was not arrested by the officers.

Both Deputy Bell and Trooper Edwards testified for the State. Bell recalled being dispatched to George's at about 11:00 p.m. because of the reported disturbance. Because of his prior experiences with appellant, he called for Edwards to back him up. Edwards was also familiar with appellant from prior encounters. Bell arrived at the restaurant shortly before Edwards.

After they arrived and investigated the situation, the two officers concluded that appellant was intoxicated. Bell arrested appellant for public intoxication. Appellant made it clear by actions and words that he did not want to be arrested or taken to jail. He resisted the officers' attempts to handcuff him and place him in Bell's vehicle. A struggle ensued. At some point Deputy Laws also arrived and assisted. Appellant was eventually handcuffed. During the process of appellant's handcuffing, appellant kicked Bell in the leg and injured Bell.

3

According to Edwards, appellant had previously used the same tactic of kicking the person behind him. Edwards saw appellant kick Bell and believed that the kick was completely intentional on appellant's part.

Appellant lost his balance and fell. The struggle continued. Appellant could not be persuaded to get up and walk to the patrol car, so Bell had to bring his vehicle to appellant, and the officers had to lift appellant into the vehicle. As they placed him into the back seat, he continued to try to kick them.

Appellant was transported to the sheriff's office in the back seat of Bell's vehicle. When they arrived at the county jail, appellant had to be carried from the car because he refused to walk. The officers took appellant directly to the "drunk tank" cell because of his intoxication and his agitated condition. At the jail Bell and Edwards were joined again by Deputy Laws. Once appellant was in the drunk tank cell, the officers began removing appellant's clothes, except for his underwear. The officers testified that while they were removing appellant's handcuffs, shirt and coat, appellant kicked them and intentionally struck Edwards in the mouth with his hand. The struggles were of such nature that even with Laws helping them, the officers could not control appellant, and Bell eventually had to use pepper spray to cause appellant to submit.

After the State rested, appellant testified. His testimony clashed categorically with that of the State's witnesses. He denied drinking any alcoholic beverages on the evening in question. According to appellant, he had been to a friend's house and was walking home when he came upon Heying, her pickup truck, and the large dog which she had in

4

her truck. The dog began barking at him and appellant was concerned that the dog would bite him, so he stopped walking. He denied going on the restaurant property and denied talking to Heying or asking her to go into the restaurant to get customers to come outside. He denied asking Heying to buy beer for him. He eventually started walking slowly away, still concerned that Heying's dog would somehow bite him. He knew Bell, Edwards and Laws were law enforcement officers when they arrived. He denied cussing the law enforcement officers or kicking Bell in George's parking lot. He maintained that the officers cussed him, arrested him for public intoxication, used unreasonable force during his arrest and treated him badly. He claimed that the abuse was because he had previously called LULAC and State Senator Duncan to report the officers' prior similar treatment of him. While the officers were in the process of handcuffing his wrists behind his back, he had an epileptic seizure. He recalled nothing else of what occurred until he began waking up from his seizure as he was being dragged into the drunk tank at jail by the officers.

Appellant testified that when he began coming out of his seizure, he asked the officers if he could make telephone calls. He was not allowed to do so. He wanted to call State Senator Duncan, the chief of the Texas Rangers and the F.B.I. Instead of allowing him to make any phone calls, appellant asserted that Bell, Edwards and Laws began slamming him onto the floor of the drunk tank, jerking his arms while he still had the handcuffs on, kneeing him in different places, and "fighting and beating on me in the drunk tank." Appellant maintained that he did not fight back and that he did not hit Edwards in

5

the face, but rather that he put his open hand on Edwards' chest and shoved Edwards backwards during the beating.

Appellant claimed that he was not given his epilepsy medications while he was in jail. He also specifically denied assaulting any of the officers. His testimony was frequently rambling and nonresponsive to the questions of his attorney as well as to those of the prosecutor. For example, in response to his attorney's question as to whether he kicked Deputy Bell in the parking lot at George's restaurant, appellant denied kicking Bell, but he volunteered that "I'll do the best to protect myself on how I've been assaulted and almost killed by officers, I will just do it if they do major use of force on me or aggravated assault on me." And, in response to his attorney's question about whether he had been convicted for the aggravated assault on a police officer which was included in the indictment as enhancement, appellant answered "Yes," then volunteered that "I've been convicted of more than once, yes sir."

The injury to Bell during the struggles in the parking lot at George's restaurant was the basis for the charge in cause number 98-1980, out of which this appeal arises. The injury to Edwards during the struggles at the county jail was the basis for a separate charge of assault on a public servant performing his duty. The two charges were tried together. Appellant was convicted of both charges. He was sentenced by the court to serve concurrent 15 year terms of confinement.

By his sole issue, appellant asserts that trial counsel rendered ineffective assistance of counsel in violation of the Sixth Amendment to the United States Constitution

6

and article One, Section Ten of the Texas Constitution. The issue is founded on three bases: (1) during trial, counsel both actively elicited evidence of and opened the door to additional evidence of extraneous crimes, wrongs, and bad acts by appellant; (2) counsel placed appellant's character in issue; and (3) counsel failed to object to hearsay evidence that a doctor had diagnosed appellant as not having the epilepsy which appellant claimed to have, and which evidence undercut one of the defense's theories. In urging the issue, appellant notes that trial counsel's defensive strategy is "fairly apparent from the record. It centered around eliciting evidence in order to establish a possible self-defense claim and to enable him to request instructions on certain lesser-included offenses in the charge." Appellant's brief then notes that the strategies appear facially sound, appellant's trial counsel acted consistently with them, the self-defense claim was based on appellant's extensive history with law enforcement and appellant's claim that he was a seizure-prone epileptic, and that through his strategy, trial counsel was able to get most of his defensive requests included in the jury charge. Trial counsel is criticized, however, for his tactical management of the defensive theories by eliciting and allowing a "landslide" of damaging evidence, "most of which" either was not or would not have been admissible otherwise. The conclusion drawn by appellant on appeal, in hindsight, is that the evidence complained of was only "loosely relevant" to the defensive theories, and taken as a whole, was far more damaging to appellant's defense than it was beneficial. The further conclusions asserted by appellant are that (1) the eliciting of and allowing introduction of the complained of evidence could not have been part of any conceivable trial strategy, and

7

(2) the deficiencies complained of are such that confidence in the outcome of the trial is, to a reasonable probability, undermined.  We disagree.


## LAW

When confronted with an ineffective assistance of counsel claim, we apply the two-pronged analysis which was set forth by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) for determining ineffective assistance of counsel claims under the Sixth Amendment to the United States Constitution: (1) did the defense attorney's representation fall below an objective standard of reasonableness under the prevailing professional norms, and if so, (2) was there a reasonable probability that but for counsel's unprofessional errors, the result of the proceedings would have been different.  See Hernandez v. State, 726 S.W.2d 53, 57 (Tex.Crim.App.1986) (adopting Strickland as applicable standard under Texas Constitution).  Judicial review of an ineffective assistance of counsel claim must be highly deferential to the counsel and avoid using hindsight to evaluate counsel's actions.  Ingham v. State, 679 S.W.2d 503, 509 (Tex.Crim.App. 1984).  There is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance.  Strickland, 466 U.S. at 689, 104 S.Ct. at 2065.  Appellate courts look to the totality of the

representation and the particular circumstances of each case in evaluating the effectiveness of counsel. Ex Parte Felton, 815 S.W.2d 733,735 (Tex.Crim.App. 1991).

The burden is on appellant to prove by a preponderance of the evidence that counsel was ineffective. Cannon v. State, 668 S.W.2d 401,403 (Tex.Crim.App. 1984). The appellant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. Jackson v. State, 877 S.W.2d 768, 771 (Tex.Crim.App. 1994). The appellant asserting ineffective assistance must present a record with evidence of the reasons that the alleged ineffective assistance actions or omissions were not trial strategy. If the record is silent about the reasons for the questioned actions or omissions, then an appellate court would have to speculate as to the reasons for the actions or alleged omissions on the part of trial counsel. A decision based on speculation would be based on no evidence; even though the actions or omissions complained of might be objectively unreasonable representation under the first prong of the Strickland test. Id.

If appellant demonstrates deficient assistance of counsel, it is then necessary that appellant also affirmatively prove prejudice as a result of the deficient assistance. McFarland v. State, 928 S.W.2d 482, 500 (Tex.Crim.App. 1996). In proving prejudice, appellant must prove a reasonable probability that but for counsel's errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Hernandez, 726 S.W.2d at 55.

9

ANALYSIS

No hearing was held on appellant's motion for new trial. Trial counsel's motives for his actions are not the subject of proof in the record. Appellant relies heavily on Anaya v. State, 988 S.W.2d 823 (Tex.App.--Amarillo 1999, no pet.), to overcome the requirement that he must offer proof of or point to record evidence of trial counsel's motives for actions or omissions which are bases for ineffective assistance claims. Appellant cites Anaya for the proposition that in some instances, when the adequacy of trial counsel's assistance is based on acts of commission, the record itself is sufficient proof of ineffective assistance.

The majority opinion in Anaya made the observations cited by appellant. Justice Quinn, however, in his concurring opinion, opined that although the alleged ineffective assistance was based on acts reflected by the record, it was still incumbent on appellant to prove that counsel's actions were not motivated by sound trial strategy, and appellant did not do so. See Anaya, 988 S.W.2d at 827 (Quinn,J.,concurring). Regardless of which approach we use in the case before us, however, appellant does not overcome the presumption that trial counsel's actions were motivated by sound trial strategy.

In examining the record for proof of counsel's motivation, we find none. In evaluating whether certain actions by trial counsel themselves, without separate proof of motives of trial counsel in taking the actions, prove counsel ineffective, this record does not contain such actions. We must consider the totality of the representation and the

10

particular circumstances of the case in evaluating the effectiveness of counsel. See Ex parte Felton, 815 S.W.2d at 735. In doing so as to appellant's trial counsel, we begin with appellant's brief. In the brief, appellant's able appellate counsel acknowledges (even without separate proof of motive, see Jackson, 877 S.W.2d at 771) that trial counsel had a facially sound trial strategy, and acted consistently with that strategy. The allegation of ineffectiveness is based on the conclusion, looking back on the trial, that trial counsel so poorly executed the "facially sound" strategy as to have failed to function as effective counsel by going too far and introducing an exhibit outlining the extraneous offenses, crimes, wrongs and bad acts which the State had disclosed to counsel over a week before trial, failing to object to testimony that appellant had at one time injured Landa's mother, by calling a witness to testify that appellant acted properly around her grandchildren and in her house, and by failing to object to one piece of hearsay evidence concerning a doctor's diagnosis that appellant did not suffer epilepsy, as he claimed he did.

The record reflects that trial counsel was faced with a not untypical choice: how to defend against several seemingly credible witnesses who testified that the defendant did what the State charged. In this case, the State presented testimony of Heying, who was effectively a stranger to appellant with no apparent motive to fabricate testimony, appellant's cousin Landa, and two law enforcement officers. The testimony of those witnesses was unequivocal and consistent. The record evidences no witness to the incidents (other than appellant) who would reasonably have contradicted the State's witnesses. Heying's husband Randy was a witness to some of the incident, but he was

11

angry at appellant for allegedly harassing Heying. Deputy Laws did not testify, but the record contains no inference that he would have testified adversely to Edwards and Bell. That left, as is so many times the situation, the defendant. If appellant did not testify differently from the State's witnesses, there was no need to have him testify. If appellant testified and contradicted the State's witnesses, as he did, he was going to be impeached by the State with a great deal, if not all, of the evidence about which appellant makes complaint. Appellant's counsel introduced the impeachment evidence on direct examination of appellant and was thus able to allow appellant to explain the extraneous crimes and bad acts in his own way, without being under the pressure of impeachment cross-examination by what the record shows to have been a well-prepared and able district attorney.

Landa's non-responsive testimony on cross-examination by appellant's counsel, to the effect that her mother had previously had difficulties with appellant, opened the door through which the State was able to elicit the specifics of the problems. Even if we assume that admission of such testimony was due to errors by counsel, however, in light of the evidence against appellant, such testimony, as well as the testimony that a doctor diagnosed appellant as not having epilepsy, and the rebuttal testimony complained of as being brought about by counsel's placing appellant's character in question, do not prove to a reasonable probability that the result of the proceeding would have been different. The complained of errors, given this record, are not sufficient to undermine confidence in the outcome. Hernandez, 726 S.W.2d at 55.

We conclude that under this record, appellant has not met the burden of proving that counsel was ineffective and that appellant was prejudiced by the matters complained of.  See Strickland, 466 U.S. at 687, 104 S.Ct. at 2064-66, 2068; Hernandez, 726 S.W.2d at 55, 57. We overrule appellant's sole issue.  The judgment of the trial court is affirmed.


Phil Johnson
Justice

Do not publish.

13